

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of      )
*(Briefly describe the property to be searched*  )
*or identify the person by name and address)*  )     Case No.  **21-MJ-1195**
                   )
Black LG Cellular Phone       )
Case Number:  SYS-21-03-0048  )
Seizure No. 2021250400161401  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the \_\_\_ Southern \_\_\_\_ District of _____California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Gabriela Acevedo, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Gabriela Acevedo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ \_ *(specify reliable electronic means).*

Date:  March 30, 2021 _____

_____
*Judge's signature*

City and state:  San Diego, California _____

HON. BERNARD G. SKOMAL, U.S. Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A

2

## PROPERTY TO BE SEARCHED

3

4    The following property is to be searched:

5    Black LG Cellular Phone
     Case Number:  SYS-21-03-0048
6    Seizure No. 2021250400161401

7    Target Device is currently in the custody of the Department of Homeland Security,
     Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

1

2

## ATTACHMENT B

3

ITEMS TO BE SEIZED

4

5

6

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

7

8

9

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 1, 2021 to March 29, 2021:

10

11

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

12

13

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

14

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

15

16

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

17

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

18

19

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

20

which are evidence of violations of Title 8, United States Code, Section 1324.

21

## AFFIDAVIT

I, Gabriela Acevedo, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device:

> Black LG Cellular Phone
> Case Number:  SYS-21-03-0048
> Seizure No. 2021250400161401

the ("Target Device"), as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Abraham Montano for Bringing in Unlawful Alien(s) into the United States without presentation. The Target Device is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd. San Ysidro, CA.

3.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

### TRAINING AND EXPERIENCE

4.     I have been employed by U.S. Customs and Border Protection since 2007, and I am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from

1

the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for thirteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.      My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.      During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal

2

1  activities. Because they are mobile, the use of cellular telephones permits alien smugglers

2  and transporters to easily carry out various tasks related to their smuggling activities,

3  including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning

4  accomplices about law enforcement activity in the area and the status of check-point

5  operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

6
      8.    The smuggling of aliens generates many types of evidence, including, but not

7  limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other

8  applications), and phone numbers of co-conspirators and illegal aliens. For example,

9  drivers and passengers responsible for transporting illegal aliens are typically in telephonic

10  contact with co-conspirators immediately prior to and/or following the crossing of the

11  illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal

12  aliens after crossing into the United States. These communications may also include

13  locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in

14  telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after

15  crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to

16  months in advance of an event to recruit drivers and to coordinate the event. It is also

17  common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has

18  occurred.

19

20
           3

21

1    9.    Based upon my training, experience, and consultations with law enforcement

2 officers experienced in alien smuggling investigations, and all the facts and opinions set

3 forth in this affidavit, I know that cellular telephones (including their Subscriber Identity

Module (SIM) card(s)) can and often do contain electronic evidence, including, for

4 example, phone logs and contacts, voice and text communications, and data, such as

5 emails, text messages, chats and chat logs from various third-party applications,

photographs, audio files, videos, and location data. In particular, in my experience and

6 consultation with law enforcement officers experienced in alien smuggling investigations,

7 I am aware that individuals engaged in alien smuggling may store photos and videos on

their cell phones that reflect or show co-conspirators and associates engaged in alien

8 smuggling, as well as images and videos with geo-location data identifying alien smuggling

9 transportation routes, and communications to and from recruiters and organizers.

10    10.    This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular

11 telephone. Specifically, searches of cellular telephones may yield evidence:

12
        a.    tending to indicate efforts to smuggle aliens from Mexico into the United

13            States;

        b.    tending to identify accounts, facilities, storage devices, and/or services–such
14
              as email addresses, IP addresses, and phone numbers–used to facilitate alien
15
              smuggling and transportation of smuggled aliens;

16      c.    tending to identify co-conspirators, criminal associates, or others involved in

17            alien smuggling, or transportation of smuggled aliens;

        d.    tending to identify travel to or presence at locations involved in the smuggling,
18
              transportation, or harboring of illegal aliens, such as stash houses, load houses,
19
              or delivery points;

20
                                          4
21

e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.    On March 29, 2021 at approximately 11:45 A.M., Abraham MONTANO (D1) and Chelsea ARAMBULA (D2) applied for admission into the United States from Mexico via the vehicle primary lanes at the San Ysidro Port of Entry. D1 was the driver of a 2000 Chevy Lumina. Upon inspection before a United States Customs and Border Protection (CBP) Officer, D1 presented his valid California identification card and D2 presented a photo from her cel. phone of her California identification card. D1 stated to the CBP Officer that he had nothing to declare and they were traveling to Chula Vista. The CBP Officer elected to refer both Defendants and the vehicle to secondary for further inspection.

12.    In secondary inspection, D1 drove the vehicle through an x-ray device where the operating officer detected anomalies in the rear cargo area of the vehicle. D1 and D2 were removed from the vehicle and escorted to a secured office. CBP Officers opened the trunk and assisted in the removal of two male individuals out of the vehicle. The individuals were found to be a citizens of Mexico with no entitlements to enter the United States. The males are now being held as a Material Witnesses and identified as Roman GARCIA Sanchez and O.F.G.

13.    D1 was advised of his Miranda Rights and agreed to answer questions without an attorney present. D1 denied knowledge of the concealed persons in the vehicle he was a driver in. D1 stated he let an un unknown male this morning barrow the keys to the vehicle he was driving at Plaza Rio in Tijuana. D1 stated he lives in Tijuana, Mexico with D2. D1 stated he was driving to Chula Vista for his girlfriend's appointment.

5

14.     D2 was advised of her Miranda Rights and agreed to answer questions without an attorney present. D2 denied knowledge of the concealed persons in the vehicle she was a passenger in. D2 admitted she lives in Mexico with D1. D2 admitted she agreed to transport money from the United States to Mexico. D2 stated she traveled with her boyfriend to Plaza Rio to have a GPS installed in her car by a money transport team. D2 admitted they gave the car to an unknown male. D2 admitted once the unknown male returned, they drove the car to the San Ysidro Port of Entry. D2 stated D1 was aware and agreed to pick up money with her in Chula Vista and subsequently transport it to Tijuana, Mexico. D2 stated she would be paid 10% of the amount of money she would be delivering.

15.     Interviews were conducted with the Material Witnesses, who admitted to being citizens of Mexico without legal documents to enter the United States. Material Witnesses admitted they were to pay between $18,000.00 USD and an unknown amount to be smuggled into the United States. Both Material Witnesses stated they intended to travel to California.

16.     Black LG Cellular Phone Target Device was discovered D1's front pocket. The Target Device was subsequently seized.

17.     Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that D1 was using the Target Device to communicate with others to furtherthe smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will

6

1   continue to attempt to communicate with a defendant after their arrest to determine the
2   whereabouts of the aliens. Based on my training and experience, it is also not unusual for
    individuals, such as Defendant, to attempt to minimize the amount of time they were
3   involved in their smuggling activities, and for the individuals to be involved for weeks and
4   months longer than they claim. Accordingly, I request permission to search the Target
    Device for data beginning on March 1, 2021, up to and including March 29, 2021.
5
                                        **METHODOLOGY**
6
            18.    It is not possible to determine, merely by knowing the cellular telephone's
7   make, model and serial number, the nature and types of services to which the device is
8   subscribed and the nature of the data stored on the device. Cellular devices today can be
    simple cellular telephones and text message devices, can include cameras, can serve as
9   personal digital assistants and have functions such as calendars and full address books and
10  can be mini-computers allowing for electronic mail services, web services and rudimentary
    word processing. An increasing number of cellular service providers now allow for their
11  subscribers to access their device over the internet and remotely destroy all of the data
12  contained on the device. For that reason, the device may only be powered in a secure
13  environment or, if possible, started in "flight mode" which disables access to the network.
    Unlike typical computers, many cellular telephones do not have hard drives or hard drive
14  equivalents and store information in volatile memory within the device or in memory cards
15  inserted into the device. Current technology provides some solutions for acquiring some of
16  the data stored in some cellular telephone models using forensic hardware and software.
    Even if some of the stored information on the device may be acquired forensically, not all
17  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
18  data acquisition or that have potentially relevant data stored that is not subject to such
19  acquisition, the examiner must inspect the device manually and record the process and the
20
                                              7
21

results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

21.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

22.     Because the Target Device was seized at the time of Montano's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is from **March 1, 2021, through March 29, 2021**.

23.     Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

8

1    I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3

Gabriela Acevedo, CBP Enforcement Officer

4

5    Sworn and attested to under oath by telephone, in accordance with Federal Rule of
Criminal Procedure 4.1, this 30th day of March, 2021.

6

7

HON. BERNARD G. SKOMAL

8    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20                                                          9

21